UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
PIERRE MARCEL SANCHEZ,

                Petitioner,                **MEMORANDUM & ORDER**
                                                                     2:18-CV-4637 (PKC)

      - against -

THOMAS GRIFFIN,

                Respondent.
---------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Pierre Marcel Sanchez ("Petitioner"), appearing *pro se*,[1] petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence for criminal contempt. For reasons detailed below, the petition is dismissed without prejudice to allow Petitioner an opportunity to exhaust his claims in state court.

## BACKGROUND[2]

Due to a history of domestic violence, Diana Perrone ("Perrone") obtained an order of protection from Nassau County against Petitioner. (State Court Record ("R."), Dkt. 12, at

---

[1] Because Petitioner is *pro se*, the Court liberally construes his petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation and italics omitted). However, the Court notes that it "'need not act as an advocate for'" Petitioner. *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

[2] Because Petitioner was convicted, the Court construes the facts in the light most favorable to Respondent. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Cruz v. Colvin*, No. 17-CV-3757 (JFB), 2019 WL 3817136, at *12 (E.D.N.Y. Aug. 14, 2019) (citing, *inter alia*, *Jackson* and *Ponnapula*).

1

ECF[3] 64.) Perrone and Petitioner were previously in a relationship, and have a child together. (*Id.*) Petitioner was first arrested on January 4, 2017, after following Perrone's vehicle from her place of work and onto the Belt Parkway, in violation of the order of protection. (*Id.*) On April 7, 2017, Petitioner again violated the order of protection when he hid behind Perrone's parked car in a Queens County restaurant and then approached Perrone while holding a knife. (*Id.*) Petitioner argued with Perrone, pushed her to the ground, and took Perrone's phone to prevent her from calling 911. (*Id.*) At the time of the attack, Perrone was with a friend, "Mike." (*Id.*) Petitioner was then arrested for the second time two days later on April 9, 2017. (*Id.* at ECF 31.)

On April 17, 2017, Petitioner was charged, under Queens County Indictment Number 826/2917, with Robbery in the First[4] Degree, Grand Larceny in the Fourth Degree, Criminal Contempt in the First Degree (four counts), Menacing in the Second Degree, Criminal Mischief in the Fourth Degree, Attempted Assault in the Third Degree, Stalking in the Third Degree, Stalking in the Fourth Degree, and Criminal Contempt in the Second Degree. (*Id.* at ECF 5, 64–65.) The grand jury returned a single indictment for the charges arising from both of Petitioner's arrests. (*Id.* at ECF 5.) In advance of trial, Petitioner's trial counsel filed an omnibus motion including, *inter alia*, a motion for severance of counts, a "motion to order the preservation and production of all 911 and Sprint tapes, all radio runs, and other recordings that pertain to this case," and a motion for *Brady* materials. (*Id.* at ECF 1–27.) In its response, the prosecution noted

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] The Court notes that the record is inconsistent as to what Petitioner was charged with. (*Compare* R., Dkt. 12, at ECF 5 (noting that Petitioner was charged with Robbery in the Third Degree), *with id.* at ECF 64–65 (noting that Petitioner was charged with Robbery in the First Degree).)

2

that it had the 911 call and radio run from the January 4, 2017 arrest, but not the April 10, 2017 arrest. (*See id.* at ECF 38.) The state court denied Petitioner's severance motion, but granted Petitioner's motion regarding the 911 tapes and *Brady* materials to the extent that the prosecution was required to disclose such materials already pursuant to *Brady v. Maryland*, 373 U.S. 83 (1968), and N.Y. Crim. Proc. Law § 240.20. (*Id.* at ECF 43, 44.)

During the trial,[5] before the close of the prosecution's case,

> the [prosecution] learned that a 911 call made by an unknown witness—which reported the incident, but did not mention that [Petitioner] was holding a knife— and was believed to have been destroyed, was available. When the [prosecution] located a copy of the 911 call, it was immediately made available to [Petitioner] who was given an opportunity to seek an extension of time to investigate and/or recall witnesses, if necessary. All of that was placed in the record. Likewise, the complainant, "Mike," that was with Diana Perrone when [Petitioner] approached her on April 7, 2017, in violation of a valid order of protection[,] refused to provide either law enforcement or the [prosecution] with any information regarding his identity. During trial, but prior to the close of the [prosecution's] evidence, the [prosecution] finally became aware of "Mike's" full name and his pedigree information. The [prosecution] made an extensive record regarding this complainant and a subpoena was issued for his production in court. Additionally, his pedigree and contact information were provided to [Petitioner]. According to ADA Camillo, both issues were placed in the record prior to the close of the [prosecution's] case and were litigated in depth.

(*Id.* at ECF 65–66.)[6]

---

[5] The Court was not provided with a transcript of the state trial proceeding. (Respondent's Brief ("Resp.'s Br."), Dkt. 11, at 4 n.1 (noting that Respondent was "relying on the State's affirmation in response to [P]etitioner's 440.10 motion. . . . because [t]he State does not have a copy of the trial transcript.").) However, Petitioner does not raise the lack of a transcript as an issue and the Court does not find it necessary to review the transcript in order to reach its decision.

[6] The state record indicates this information, collected in response to Petitioner's numerous motions pursuant to New York Criminal Procedure Law § 440.10 ("Section 440 Motion"), discussed *infra*, was provided by ADA Jennifer Camillo in early September 2018. (R., Dkt. 12, at ECF 65 n.3.) Petitioner appears to contest this version of events. In his Section 440 Motion, he argues that "[b]ecause [the] trial had almost concluded at the time that [the] prosecutor revealed the name to [t]rial [c]ounsel, counsel was unable to depose and investigate the witness and possible exculpatory testimony supporting the defendant's defense at trial." (*Id.* at ECF 92.)

On January 19, 2018, the jury found Petitioner guilty of three counts of Criminal Contempt in the First Degree and one count of Criminal Contempt in the Second Degree. (*Id.* at ECF 66.) On March 5, 2018, Petitioner was sentenced to two to four years on the three first-degree criminal contempt charges, to run concurrently, and one year on the second-degree criminal contempt charge, to run consecutively. (*Id.*)

On March 16, 2018, Petitioner filed his first Section 440 Motion. (*Id.* at ECF 67; *see also id.* at ECF 83–97.) On March 20, 2018, Petitioner filed a Notice of Appeal. (*Id.* at ECF 66.)[7] In response, the New York State Appellate Division, Second Department, granted Petitioner's motion for poor person relief and assigned him counsel for his direct appeal. (*Id.*) Petitioner has not perfected his appeal as of the filing of this instant *habeas* petition. (*See* Petition, Dkt. 1, at ECF 2 (checking "No" in response to question "Did you appeal from the judgment of conviction?").) However, Petitioner has filed several Section 440 motions. (*See, e.g.*, R., Dkt. 12, at ECF 61–62 (June 30, 2018 filing), 46, 55–60 (July 9, 2018 filing); *see also id.* at ECF 63 (noting that Petitioner has filed Section 440 Motions and/or supplements to those motions on March 16, 2018; June 30, 2018; July 9, 2018; and July 16, 2018).) It does not appear that the state court has ruled on any of Petitioner's Section 440 Motions. (*See* Resp.'s Br., Dkt. 11, at 12 (noting that, as of January 7, 2019 "the state court has yet to decide [Petitioner's] motion[s]").)

---

[7] The Court notes that Petitioner has asserted, in a July 9, 2018 Affidavit, that he has not filed a notice of appeal. (R., Dkt. 12, at ECF 5 ("[Petitioner] has not yet filed a notice of appeal . . . .").) However, the Court takes judicial notice of an April 3, 2018 "Decision & Order on Motion" from the New York Appellate Division, Second Department granting Petitioner's "[m]otion by the appellant pro se for leave to prosecute an appeal from a judgment of the Supreme Court, Queens County, rendered March 5, 2018, as a poor person, and for the assignment of counsel." *People v. Sanchez*, Ind. No. 826/17, 2018-03764, at 1 (N.Y. App. Div. Apr. 3, 2018).

## LEGAL STANDARD

"A federal district court should dismiss a state prisoner's habeas petition 'if the prisoner has not exhausted available state remedies as to any of his federal claims' [because] 'states should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'" *Hust v. Costello*, 329 F. Supp. 2d 377, 379 (E.D.N.Y. 2004) (quoting *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ."). This "exhaustion requirement is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (internal quotations, citations, and alterations omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.")); *Baity v. McCary*, No. 02-CV-1817 (LAP) (AJP), 2002 WL 31433293, at *2 (S.D.N.Y. Oct. 31, 2002) ("A diminution of statutory incentives to proceed first in state court would also increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce.") (citing *Duncan v. Walker*, 533 U.S. 167, 180 (2001)).

Accordingly, when presented with a *habeas* petition containing only unexhausted claims, a federal court "must exercise one of two options: (a) dismiss [without prejudice] for failure to exhaust, or (b) deny on the merits pursuant to § 2254(b)(2)." *Polanco v. Ercole*, No. 06-CV-1721 (RMB) (DFE), 2007 WL 2192054, at *8 (S.D.N.Y. July 31, 2007); *see also* 28 U.S.C. § 2254(b)(2)

("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

## DISCUSSION

Petitioner seeks *habeas* relief on four grounds: (1) an illegal sentence; (2) a *Brady* violation; (3) improper merger of indictment; and (4) improper conduct by Perrone and the state court judge. (*See* Petition, Dkt. 1, at ECF 5, 6, 8, 11.) Respondent argues that the *habeas* petition should be dismissed because Petitioner has not exhausted any of his claims. (Resp.'s Br., Dkt. 11, at 8.) Petitioner does not appear to contest this categorization. In fact, he acknowledges that he has only raised the first two claims in his Section 440 motion (Petition, Dkt. 1, at 5–7) and his third claim in an "order to produce" (*id.* at 8). Petitioner also notes that he has not previously raised his fourth claim at all. (*Id.* at 11.) Respondent adds that Petitioner has filed a Notice of Appeal and has been assigned appellate counsel, but has not yet perfected his appeal. (Resp.'s Br., Dkt. 11, at 5); *see also Sanchez*, Ind. No. 826/17, 2018-03764, at 1. Therefore, the Court finds that Petitioner has not exhausted any of his claims for *habeas* relief. *See Warren v. Goord*, No. 06-CV-1423 (RRM), 2013 WL 1310465, at *10 (E.D.N.Y. Mar. 28, 2013) ("To satisfy the exhaustion requirement, a petitioner must first 'fairly present to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.'") (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)); *see also Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (noting that the exhaustion requirement provides state courts with the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights").

Consequently, the Court must either dismiss Petitioner's claims without prejudice while he pursues exhaustion in state court or deny Petitioner's claim on the merits, notwithstanding his

6

failure to exhaust. *Polanco*, 2007 WL 2192054, at *8.[8] Petitioner's claims may only be dismissed on the merits if they are "plainly meritless" or "patently frivolous." *Madison v. Colvin*, No. 17-CV-7250 (JMA), 2019 WL 3321748, at *5 (E.D.N.Y. July 24, 2019); *see also Warren*, 2013 WL 1310465, at *11 ("Though neither the Supreme Court nor the Second Circuit has established a standard to guide the exercise of this discretion, many courts in this Circuit have denied unexhausted claims upon a determination that they are patently frivolous."). Although the Court previously indicated that it would consider Petitioner's claims on the merits (June 11, 2019 Docket Entry), the Court finds—upon further review of the state record—that such action is premature given that the Court does not have the benefit of a trial transcript to aid in its analysis of Petitioner's claims.[9]

Additionally, it does not appear that it would be futile for Petitioner to attempt to exhaust his claims given that Petitioner has filed a Notice of Appeal and been assigned appellate counsel. Furthermore, "the timeliness of any subsequent habeas petition under the AEDPA appears not to be a concern." *Liao v. Evans*, No. 13-CV-0966 (LEK), 2014 WL 3535727, at *5 (N.D.N.Y. July 16, 2014); *see also id.* at *4–5 (declining to dismiss unexhausted *habeas* petition on the merits when it did not appear that it was futile for Petitioner to exhaust state remedies); *Carpenter v.*

---

[8] The Court notes that "[b]ecause there are no exhausted claims that could stay the petition, [Petitioner's] case is distinguishable from the Second Circuit's holding in *Zarvela v. Artuz*, 254 F.3d 374, 380 (2d Cir.), *cert. denied*, 534 U.S. 1015 (2001), which granted district courts the authority to stay a 'mixed' petition while a petitioner exhausts his state court claims." *Hust*, 329 F. Supp. 2d at 380.

[9] Specifically, the Court would need to review the trial proceedings themselves as part of its *de novo* determination of the merits of Petitioner's unexhausted *Brady* and improper conduct claims. *See Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009). However, it appears that no trial transcript is available—likely because Petitioner has not yet perfected his direct appeal, *see* N.Y. Crim. Proc. Law § 460.70—which precludes a proper *de novo* review of these claims.

7

*Reynolds*, 212 F. Supp. 2d 94, 98 (E.D.N.Y. 2002) (noting that by dismissing a *habeas* petition without prejudice for failure to exhaust state remedies, it "enables [a petitioner] to file a future petition without being barred by the AEDPA's prohibition on second or successive petitions").[10]

Finally, the Court notes that "a court may deem unexhausted claims exhausted where the state court to which the petitioner must present those claims would find them procedurally barred." *Madison*, 2019 WL 3321748, at *5 (citing *Jackson v. Conway*, 763 F.3d 115, 143–44 (2d Cir. 2014)). A "dismissal of a habeas claim on the ground that it was procedurally defaulted differs crucially from a dismissal for failure to exhaust state remedies [because] [d]ismissal for a procedural default is regarded as a disposition of the habeas claim on the merits." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (internal quotations and citation omitted). "This means that any future presentation of the claim would be a second or successive habeas petition, requiring authorization by this Court pursuant to 28 U.S.C. § 2244(b)(3)(A)." *Id.* The Court concludes that it has insufficient information on the current record to determine whether Petitioner's claims are procedurally defaulted. *See Carpenter*, 212 F. Supp. 2d at 97–98 (declining to find a petitioner's

---

[10] However, even if Petitioner's subsequent *habeas* filing would be untimely, dismissal without prejudice at this juncture of the case would still be appropriate. As the Second Circuit has noted,

> dismissing a timely filed habeas petition "without prejudice" for failure to exhaust state court remedies would be an "illusion" where a "petitioner could never succeed in timely re-filing the petition because he would already be time-barred." In such a situation, the Second Circuit noted that, under appropriate circumstances, a petitioner may be entitled to tolling as a matter of equity for a subsequently filed habeas petition.

*Hust*, 329 F. Supp. 2d at 379–80 (quoting *Rodriguez v. Bennett*, 303 F.3d 435, 439 (2d Cir. 2002)); *see also Carpenter*, 212 F. Supp. 2d at 98 (dismissing a petition without prejudice for failure to exhaust when, "with reasonable certainty," it appeared that Petitioner could take advantage of "various stays and tolling provisions of the [AEDPA] limitations period" to ensure that any subsequently-filed *habeas* petition was timely filed).

8

*habeas* claims procedurally defaulted when the court had "not been presented with enough information to determine" whether, as a matter of state law, Petitioner's claims were procedurally barred). Notably, Respondent does not raise this argument and instead asserts that Petitioner's claims are unexhausted. (Resp.'s Br., Dkt. 11, at 8.) Although Petitioner does not cite to any specific provision of New York's criminal procedure rules, he asserted in his Section 440 motion papers that "[his second Section 440 motion] tolls the time to file a notice of appeal with the Supreme Court['s] Appellate Division, Second Department." (R., Dkt. 12, at ECF 55.) Additionally, Petitioner has been appointed appellate counsel who, it is reasonable to assume, is diligently ensuring that Petitioner timely perfects his direct appeal. (Resp.'s Br., Dkt. 11, at 5 (stating that "[o]n April 3, 2018, the Appellate Division, Second Department granted [Petitioner's] motion for poor person relief and assigned counsel for his direct appeal")); *see also Sanchez*, Ind. No. 826/17, 2018-03764, at 1.

Accordingly, the Court finds dismissal of the petition to be the most appropriate remedy for this action. Petitioner's *habeas* petition is dismissed in its entirety, without prejudice, to allow the Petitioner an opportunity to exhaust his claims in state court. *See Diguglielmo v. Senkowski*, 42 F. App'x 492, 496 (2d Cir. 2002) (summary order) ("Thus, because the New York Court of Appeals has not yet had an opportunity to address [Petitioner's] federal claims, comity requires that [the Court] allow that [state] court an opportunity to do so.").

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is dismissed without prejudice. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate

of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (quotations and ellipsis omitted). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

                                                SO ORDERED.

                                                */s/ Pamela K. Chen*
                                                Pamela K. Chen
                                                United States District Judge

Dated: August 29, 2019
       Brooklyn, New York